**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COYLE PROPERTIES LIMITED II, LLC and COYLE MANAGEMENT, INC., | ) ) ) | No. 3:24-00098 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Robert J. Colville |
| RSUI INDEMNITY COMPANY, MCGOWAN & COMPANY, INC., and RISK PLACEMENT SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 51) filed by Defendant Risk Placement Services, Inc. ("Defendant Risk Placement"), a Motion to Dismiss (ECF No. 56) filed by Defendant McGowan & Company, Inc. ("Defendant McGowan," and, together with Defendant Risk Placement, "Broker Defendants"), a Motion for Partial Judgment on the Pleadings (ECF No. 53) filed by Plaintiffs Coyle Properties Limited II, LLC and Coyle Management, Inc. (each or both referred to as "Plaintiffs"), and a Cross Motion for Judgment on the Pleadings (ECF No. 64) filed by Defendant RSUI Indemnity Company ("Defendant RSUI," and, along with Broker Defendants, "Defendants"). The Court has subject matter jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1332(a). The Motions have been fully briefed and are ripe for disposition.

## I.     Factual Background & Procedural History

In the Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motions at issue:

1

Plaintiffs own and operate a McDonald's restaurant franchise. ECF No. 28 ¶ 10. In December 2023, T.M., a minor and former employee of Plaintiffs, through her guardian, filed a lawsuit against Plaintiffs, alleging that throughout her employment with Plaintiffs, another employee, Taylor English ("Mr. English"), groomed, sexually harassed, exposed his genitals to, sexually assaulted, and statutorily raped T.M., and threatened her if she exposed this behavior to others. *Id.* ¶ 14–23. The complaint against Plaintiffs alleges that T.M. reported Mr. English's behavior to her superiors, who did not adequately address them. *Id.* ¶ 24–30. The suit brought various claims against Plaintiffs related to their handling of Mr. English's alleged conduct. *Id.* ¶ 33.

In January 2024, Madison Gordon, at the time of her alleged abuse a 17-year-old employee of Plaintiffs, filed a lawsuit against Plaintiffs, alleging that throughout her employment with Plaintiffs, Mr. English, sexually harassed and sexually assaulted her, and threatened her if she exposed this behavior to others. *Id.* ¶ 34–43. The complaint against Plaintiffs alleges that Ms. Gordon reported Mr. English's behavior to her superiors, and they did not adequately address them. *Id.* ¶ 44–49. The suit brought various claims against Plaintiffs related to their handling of Mr. English's alleged conduct. *Id.* ¶ 54.

During the time of the alleged sexual harassment, sexual assaults, and rape, Plaintiffs had insurance. *Id.* ¶ 61. Plaintiff's directors and officers liability insurance and employment practices liability insurance policies were provided by Defendant RSUI. *Id.* ¶ 57. Arthur J Gallagher & Co. was Plaintiffs' insurance broker. *Id.* ¶ 56. Each year, on March 1, Defendant RSUI would issue a renewal policy. *Id.* ¶ 59. Defendant Risk Management and Defendant McGowan "had a role" is the procurement of the insurance policies provided by Defendant RSUI. *Id.* ¶ 60.

T.M. and Madison Gordon both initiated proceedings, and although there are minor differences, the Court will describe the events together, as a full breakdown of these differences is not material to the Court's subsequent analysis of the case at bar or the present Motions.  In the summer of 2023, T.M. and Madison Gordon filed separate charges against Plaintiffs with the Equal Employment Opportunity Commission (the "EEOC") related to the events involving Mr. English.  *Id.* ¶ 62; 89.  When Defendant RSUI learned of the charges, it sent denial of coverage letters to Plaintiffs, referring them to an exclusion clause (the "Exclusion Clause") that indicated that the policies do not provide coverage for claims related to sexual harassment or sexual assault:

> Although this matter is a Claim for Wrongful Acts, we next direct you to the Policy's exclusion at Section IV.15., which provides:
>
>> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>>
>> 15. For that portion of any Claim (including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of Loss arising from any such Claim shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that Claims including both Employment Practices Wrongful Acts and Matters Excluded shall be allocated Claims (partially covered) and that Matters Excluded go beyond, and are not considered to be Employment Practices Wrongful Acts or acts that trigger coverage under the Policy.
>
> With respect to Section IV.15., coverage is excluded for the "portion of any claim … made against any insured alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegation of sexual harassment[.]"  As every portion of the [victim's] Claim alleges, arises out of, is based upon or attributable to, or in any way involves, in whole or in part, English's

3

> alleged sexual assault [and statutory rapes] of [victim], Exclusion 15 excluded coverage for the [victim] claim in its entirety.

ECF No. 28-2; 28-3.

Following receipt of settlement demand letters from T.M.'s and Madison Gordon's counsel, Defendant RSUI sent additional denial letters. ECF No. 28 ¶ 67; 92.

T.M. and Madison Gordon filed their lawsuits. ECF No. 28 ¶ 69; 95. Plaintiffs' counsel then sent letters to Defendant RSUI's counsel, essentially demanding coverage. In the letter, Plaintiffs' counsel points to a severability clause that provides for non-imputation (the "Non-Imputation Clause"):

> We have reviewed the applicable Policy, [policy numbers], issued to [Plaintiffs] (hereafter "the Policy") and we respectfully disagree with the coverage denial that you issued in connection with those administrative charges, since it is apparent that Exclusion 15 that is cited and quoted therein was not a valid basis upon which to refuse to defend Coyle for those charges. Coyle incurred significant legal fees in connection with the defense of those actions, for which it now demands immediate reimbursement from RSUI for breach of its duty to defend. Among other things, it is apparent from a review of the Policy that the language in the Exclusions section states that: "The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV." That qualifying language undercuts RSUI's coverage denial and warrants an immediate reversal of RSUI's coverage position. Furthermore, the language in Exclusion 15 and in the Policy section regarding Allocation requires RSUI to defend the administrative actions, since portions of the administrative claims were potentially covered under the Policy. Please confirm that RSUI will reimburse [Plaintiffs] for [their] legal fees incurred in the defense of the administrative actions.

ECF No. 28-3.

Defendant RSUI sent Plaintiffs' counsel response letters stating that Defendant RSUI was maintaining denial of coverage for the EEOC claims and would not provide coverage for the lawsuits. ECF No. 28 ¶ 73; 96. The letter went on the explain Defendant RSUI's position with respect to the Non-Imputation Clause:

> RSUI need not (and did not) impute the Wrongful Act of English to [Plaintiffs] and [their] affiliates in order to determine the applicability of Exclusion 15 as it pertains to the Insured entities in question. . . . The [T.M. and Madison Gordon] Matters, including the currently pending Lawsuit, is a pursuit of [Plaintiffs'] own liability in connection with the alleged sexual assaults of [victims and its] alleged failure to take corrective action.

ECF No. 28-3.

This exchange of demands and denials went on for some time, but at the end, Defendant RSUI did not agree to cover Plaintiffs for any claims, charges, or lawsuits related to Mr. English's alleged assaults of T.M. and Madison Gordon. ECF No. 28 ¶ 85; 108.

On May 10, 2024, Plaintiffs initiated this lawsuit. ECF No. 1. On November 5, 2024, Plaintiffs filed an Amended Complaint, bringing claims for breach of contract, bad faith, negligence, and breach of fiduciary duty, and seeking a declaratory judgment that Defendant RSUI has a duty to defend Plaintiffs in the lawsuit brought by T.M. and Madison Gordon. On January 21, 2025, Defendant Risk Placement filed a Motion to Dismiss, along with a Brief in Support (ECF No. 52). On February 11, 2025, Plaintiffs filed a Response in Opposition (ECF No. 60). On February 18, 2025, Defendant Risk Management filed a Reply (ECF No. 66) to Plaintiffs' Response. On January 24, 2025, Defendant McGowan filed a Motion to Dismiss, along with a Brief in Support (ECF No. 57). On February 14, 2025, Plaintiff filed a Response in Opposition (ECF No. 61).

On January 24, 2025, Plaintiffs filed a Motion for Partial Judgment on the Pleadings, along with a Brief in Support (ECF No. 54). On February 14, 2025, Defendant RSUI filed a Cross Motion for Judgment on the Pleadings, along with a Brief in Support (ECF No. 63). Parties exchanged briefing (ECF Nos. 67; 68; 69) respecting the Motions of Judgment on the Pleadings. Plaintiffs and Defendant RSUI filed a Joint Motion for Oral Argument (ECF No. 70) respecting the Motions for Judgment on the Pleadings, which the Honorable Stephanie L. Haines granted.

ECF No. 71.  On April 23, 2025, Judge Haines held a hearing on the Motions (the "Hearing").  On January 2, 2025, this matter was transferred to this Court.

## II.      Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g.*, *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D. Pa. 2012); *see Harleysville INS. Co. of New York v. Cerciello*, No. 3:08-CV-2060, 2010 WL 11534317, at *2 (M.D. Pa. 2010) ("The standard of review used for a motion for judgment on the pleadings is substantively identical to that of a motion to dismiss."); *see also Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x. 143, 147 (3d Cir. 2011). Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(h)(2)(B). The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(c); *Cerciello*, 2010 WL 11534317, at *2. "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman*, 919 F. Supp. 2d 512, 521 (E.D. Pa. 2013)).

### III.   Discussion

#### A. Broker Defendants' Duty

Counts IV, V, VI, and VII are claims for Negligence and Breach of Fiduciary Duty against Defendant McGowan and for Negligence and Breach of Fiduciary Duty against Defendant Risk Placement, respectively. Both Defendant McGowan and Defendant Risk Placement move separately to dismiss these claims, both arguing, *inter alia*, that Plaintiffs do not allege facts to establish that Broker Defendants owed a duty to Plaintiffs to establish these causes of action.

### 1. Negligence

Under Pennsylvania law, to state a claim for Negligence, a plaintiff must allege: "(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; [and] (4) actual loss or damage resulting to the plaintiff." *Pusateri v. Wal-Mart Stores E., L.P.*, 646 F. Supp. 3d 650, 653 (W.D. Pa. 2022) (quoting *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 746 (2005)) (internal citations omitted in original).

"[F]or ordinary negligence purposes, the relationship between an insurance broker and client is an arm's length relationship." *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 579 (Pa.Super.Ct.2006). "An insurance broker is not under an affirmative duty . . . to advise a client regarding the extent of coverage." *Allegrino v. Conway E & S, Inc.*, No. CIV.A. 09-1507, 2010 WL 3943939, at *8 (W.D. Pa. Oct. 6, 2010). The relationship between the insured and a wholesale broker, as Broker Defendants appear to be, is even more removed. *Id.* at *10.

As Broker Defendants point out, Plaintiffs have failed to allege facts showing how an agency relationship might have formed between Plaintiffs and Broker Defendants or between Defendant RSUI and Broker Defendants. Plaintiffs allege nothing to suggest that Broker Defendants ever took a role in explaining the nature of its policies to Plaintiffs, either at the outset of coverage or during policy renewal. In fact, Plaintiffs were completely unaware of Broker Defendants until the litigation emerged. ECF No. 28 ¶ 60 ("[U]nbeknownst to John Coyle at the time [that Arthur J Gallagher & Co. procured the insurance on Plaintiff's behalf], [Defendant Risk Placement] and [Defendant McGowan] purportedly had a role in the process of procurement of the . . . insurance policies that were issued to [Plaintiff]."). Plaintiffs have not alleged any reason

for the Court to conclude that Broker Defendants undertook any duty to apprise Plaintiffs of anything respecting their insurance policies, and as such, no duty formed. *See generally Allegrino*, 2010 WL 3943939, at *8–10; *see also Hess v. Allstate Ins. Co.*, 614 F. Supp. 481, 488 (W.D. Pa. 1985), aff'd, 804 F.2d 1248 (3d Cir. 1986) (finding that an insurance broker does not have to explain conspicuous and unambiguous policies to an insured); *see also BSD-360, LLC v. Philadelphia Indem. Ins. Co.*, 580 F. Supp. 3d 92, 112 (E.D. Pa. 2022) ("[B]rokers are [not] obligated to explain clearly worded and unambiguous policy language to the insured."); *see also White Pine Ins. Co. v. Chase's Auto Salvage LLC*, No. 2:23-CV-01707-CB, 2025 WL 2662844, at *1 (W.D. Pa. Sept. 17, 2025) (finding that although "[i]f anyone had a duty to alert [regarding] the change in policy, it would have been the broker . . . [that] duty relates to 'coverage provisions . . . requested by the insured.'" The plaintiff had provided no evidence that the change was material to something known to be important or requested.).

Accordingly, the Court finds that Plaintiffs have failed to state a claim for Negligence. As such, as to the Negligence claims in Counts IV and VI, the Court will grant the Motions to Dismiss.

### 2. Breach of Fiduciary Duty

To state a claim for Breach of Fiduciary Duty, a plaintiff must allege: "(1) the existence of a fiduciary relationship; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters or which he or she was employed; (3) that the plaintiff suffered injury; and (4) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries." *Boyer v. Clearfield Cnty. Indus. Dev. Auth.*, No. CV 3:19-152, 2021 WL 2402005, at *3 (W.D. Pa. June 11, 2021) (citing *Truefit Sols., Inc. v. Bodies Done Right, LLC*, No. CV 19-145, 2019 WL 7187406, at *6 (W.D. Pa. Dec. 26, 2019)).

10

At the outset, it should be clear that if Broker Defendants did not owe a cognizable duty to Plaintiffs in a Negligence claim, *a fortiori* they do not owe Plaintiffs a fiduciary duty.  "A fiduciary duty is the highest duty implied by law."  *Baum v. Schlesinger*, No. 2:21-CV-944, 2022 WL 3716682, at *15 (W.D. Pa. May 26, 2022) (quoting *Yenchi v. Ameriprise Fin., Inc*., 639 Pa. 618, 632 (2017)).  Furthermore, "an agent typically does not incur a fiduciary duty by selling a policy to an insured."  *Durkey v. Pac. Life Ins. Co.*, No. CV 17-317, 2017 WL 8941225 (W.D. Pa. Aug. 4, 2017), *report and recommendation adopted*, No. 2:17CV317, 2017 WL 4155423 (W.D. Pa. Sept. 19, 2017) (quoting *Dixon v. Nw. Mut.*, 146 A.3d 780, 787 (Pa. Super. 2016)).  In *Yenchi*, the Supreme Court of Pennsylvania determined that a fiduciary duty does not form between the agent and the insured when "the consumer purchasing the policy does not cede decision-making control over the purchase to the" agent. *Yenchi*, 639 Pa. at 623.  Plaintiffs have not alleged facts suggesting that it ceded decision-making to Broker Defendants.  In fact, the record suggests the contrary.  As discussed, Plaintiffs were not even aware that Broker Defendants took any part in selecting or administering Plaintiffs' policies, let alone purchasing them on Plaintiffs' behalf.

Accordingly, Plaintiffs have not stated a claim for Breach of Fiduciary Duty against Broker Defendants.  As such, as to the claims for Breach of Fiduciary Duty in Counts V and VII, the Court will grant the Motions to Dismiss.

### B. The Motions for Judgment on the Pleadings

Plaintiffs move for partial Judgment on the Pleadings, arguing that, given the Non-Imputation Clauses, the Policies must cover the claims brought by T.M. and Mellisa Gordon, and Defendant RSUI should have to defend Plaintiffs in the English Lawsuits.  Defendant RSUI cross moves for Judgment on the Pleadings, arguing that the Exclusion Clause clearly demonstrates that the claims brought by T.M. and Madison Gordon are not covered under the Policies.  Defendant

RSUI also moves for Judgment on the Pleadings as to Plaintiffs' claim that Defendant RSUI made a material change to Plaintiffs' Policies without notice.

### 1. The Contractual Dispute

"'Under Pennsylvania law, which the parties agree is applicable here, the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007). "The insured has the initial burden of establishing coverage under an insurance policy." *Nationwide Mut. Fire Ins. Co. v. Black*, No. 2:04CV1644, 2007 WL 9780522 (W.D. Pa. Mar. 30, 2007) (citing *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. 1995)). "An insurer that denies coverage based upon a policy exclusion, however, bears the burden of proving such exclusion applies." *Id.* (citing *Cont'l Cas. Co. v. County of Chester*, 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003); *Mistick Inc. v. Nw. Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002)). Resolution of the meaning of the disputed contract clauses should resolve both Motions for Judgment on the Pleadings.

It appears to be uncontested that Plaintiffs have established that the Policies broadly cover Plaintiffs for workplace liabilities. The Court notes further that the Policies read that "if a Claim for a Wrongful Act is first made against the Insured Organization during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstances of this policy, the Insurer will pay on behalf of the Insured Organization all Loss the Insured Organization is legally obligated to pay." ECF No. 54 at 12. As such, the Court will consider it settled that Plaintiffs have met their initial burden. The Court turns, then, to the question of whether Defendant RSUI has met its burden of demonstrating that the Exclusion Clause applies, thereby excluding the claims brought by T.M. and Madison Gordon.

12

The Exclusion Clause in both Policies reads:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:

> 15. For that portion of any Claim (including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape, statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment ("Matters Excluded"); provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of Loss arising from any such Claim shall be allocated in accordance with this Policy's allocation provision. It is understood and agreed that Claims including both Employment Practices Wrongful Acts and Matters Excluded shall be allocated Claims (partially covered) and that Matters Excluded go beyond, and are not considered to be Employment Practices Wrongful Acts or acts that trigger coverage under the Policy.

ECF No. 28 ¶ 65.

By the Court's reading, this clause means that Defendant RSUI is not liable to pay for any losses related in any way to any legal claim against the insured to the extent that the claim involves any form of physical or sexual assault, battery, or molestation, including rape, statutory rape, or sexual assault, or any allegations thereof, and this includes any sexual assault claims that involve allegations of sexual harassment. This clearly includes the claims brought by T.M. and Madison Gordon, as they involve allegations of sexual assault and harassment.

The question then becomes whether the Non-Imputation Clause carves back Defendant RSUI's coverage to the claims brought by T.M. and Madison Gordon. The Non-Imputation Clause in both policies reads: "The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the EXCLUSIONS set forth in SECTION IV." *Id.* ¶ 71.

13

By the Court's reading, this clause means that, in deciding whether the Policy's exclusion clauses apply, if one insured person or entity does something wrongful, that wrongdoing is not attributable to other insured persons or entities. As the Court sees it, this does not function as a carve-back of the Exclusion Clause for purposes of the instant matter. The claims against Plaintiffs do not require that Mr. English's acts be imputed to Plaintiffs. Rather, the claims assert separate wrongful acts that arise out of, are based upon, or are attributable to, or in some way involve, in whole or in part, a forcible physical or sexual assault, battery or molestation, including rape, statutory rape, or sexual assault or rape claim that in some way involves a sexual harassment claim or allegations of sexual harassment. In short, the Exclusion Clause applies.

Accordingly, Defendant RSUI has shown that the Exclusion Clause applies, and therefore Plaintiffs lacked coverage for the claims brought by T.M. and Madison Gordon. As such, the Court will deny Plaintiffs' Motion for Judgment on the Pleadings and, as to the contract dispute, grant Defendant RSUI's Motion for Judgment on the Pleadings.

### 2. Material Change Without Notice

Defendant RSUI moves for Judgment on the Pleadings as to Plaintiffs' claim that the Exclusion Clause is invalid because Defendant RSUI failed to provide notice of a change to the Exclusion Clause language. Defendant RSUI argues that it did provide notice, in the form of its notice to Defendant McGowan. This dispute does not arise out of the pleadings, but rather evidence attached to the present Motion, and is therefore not appropriate for disposition of judgment on the pleadings.

Defendant RSUI also argues that the claims brought by T.M. and Madison Gordon would not have been covered even prior to the change to the Exclusion Clause. Under the prior language of the Exclusion Clause, Defendant RSUI would not be liable for "that portion of any Claim

14

(including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape ("Matters Excluded")." The addition to the Exclusion Clause was the language respecting "statutory rape or any sexual assault or rape claim that in any way involves any sexual harassment claim or allegations of sexual harassment." The old language still excludes the claims against Plaintiffs.

The Court agrees. "Pennsylvania case law . . . dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Horace Mann Ins. Co. v. Alben*, No. 08CV0353, 2008 WL 4238940, at *6 (W.D. Pa. Sept. 10, 2008) (quoting *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 454 (1987)). Although "the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations," *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994), if the language were invalid, the Court would simply revert to what Plaintiffs claim to have expected, the previous version of the Policy. Even looking just at the old policy, the claims against Plaintiffs still are "arising out of" someone "alleging" that Mr. English engaged in acts of "sexual assault," "molestation," and "rape."

As the Third Circuit Court of Appeals has explained, "[t]he phrase 'arising out of,' when used in a Pennsylvania insurance exclusion, unambiguously requires 'but for' causation." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 155 (3d Cir. 2017). The previous iteration of the Exclusion Clause denies coverage for a claim that arises out of sexual assault, battery, molestation, or rape, or allegation thereof. But for the allegations against Mr. English for acts of sexual violence, these claims would not exist. Therefore, the claims arise from allegations of sexual violence.

15

Accordingly, even if the current iteration of the Exclusion Clause is invalid, under the previous version Defendant RSUI was not liable to cover the claims against Plaintiffs. As such, as to the claim for lack of notice, the Court will grant Defendant RSUI's Motion for Judgment on the Pleadings.

### 3. Bad Faith

Plaintiffs allege that Defendant RSUI knew it had no reasonable basis to deny coverage, and therefore the denial was in bad faith. Defendant RSUI failed to raise this matter in its Motion for Judgment on the Pleadings, and only brought it up for the first time in its Reply Brief. Ordinarily, the Court would not consider entering judgment on the pleadings if the issue is not raised in the motion. However, it is clear that the Bad Faith claim cannot survive if the claim was not covered by the policy, and Plaintiffs have had adequate notice that this issue was raised and had the opportunity at the Hearing to address it (and did in fact address it briefly). ECF No. 74 at 22. Because the Court has determined that Defendant RSUI had a reasonable basis to deny coverage, it is also entitled to judgment on the pleadings as to the claim that it denied coverage in bad faith. As such, the Court will grant Defendant RSUI's Motion for Judgment on the Pleadings in full, and enter final judgment in favor of Defendant RSUI.

16

## IV.    Conclusion

For the reasons discussed above, the Court will grant Defendant Risk Management's Motion to Dismiss, grant Defendant McGowan's Motion to Dismiss, grant Defendant RSUI's Motion for Judgment on the Pleadings, and deny Plaintiffs' Motion for Partial Judgment on the Pleadings.  Plaintiffs will be given leave to amend their Complaint within 21 days of this Memorandum Opinion as to the remaining Defendants.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 31, 2026

cc: All counsel of record,